IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAYNE OESTERLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 CV 7473 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| COOK COUNTY SHERIFF'S | ) |
| DEPARTMENT, SHERIFF THOMAS | ) |
| DART, in his official capacity | ) |
| as Sheriff of Cook County, Illinois, and | ) |
| COOK COUNTY, a unit of municipal | ) |
| government, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Before us are cross-motions for summary judgment regarding the lawfulness of certain employment actions taken against Plaintiff Wayne Oesterlin by defendants, Cook County Sheriff's Department, Sheriff Thomas Dart, and Cook County. Mr. Oesterlin, a former Deputy Sheriff for the Cook County Sheriff's Department, was terminated from that position for the stated reason that he improperly used the Law Enforcement Agencies Data System ("LEADS"), in violation of a Cook County Illinois Court Services Department General Order and the Sheriff's Department's Merit Board Rules and Regulations (doc. # 102: Pl. 56.1 Statement of Undisputed Fact (PSOF) ¶¶ 27, 35). Mr. Oesterlin's termination occurred after an Office of Professional Review ("OPR")

---

[1]Pursuant to an order of the Executive Committee and on the consent of the parties and 28 U.S.C. § 636(c), on November 15, 2016, the case was assigned to this Court for all proceedings, including the entry of final judgment (doc. # 43).

investigation report on his LEADS usage recommended to the Merit Board that he be discharged; the Merit Board voted in September 2012 to discharge plaintiff effective December 27, 2010 (PSOF ¶ 24; doc. 99: Defendants' 56.1 Statement of Undisputed Fact (DSOF) ¶ 7; doc. # 69: Answer ¶ 27).

Plaintiff appealed that decision to the Circuit Court of Cook County, which on November 12, 2013, remanded the case to the Merit Board with instructions (doc. # 16: Pl.'s Mot. to Stay at 1). The Merit Board reaffirmed the termination decision, which was confirmed by the Circuit Court of Cook County on April 17, 2014 (*Id.*). Plaintiff then pursued parallel courses of action. We address in some detail the procedural course that followed that termination decision, as it bears on the decision we reach today.

On May 15, 2014, plaintiff filed a notice of appeal to the Illinois Appellate Court from the Circuit Court's decision (Pl.'s Mot. to Stay at 1-2). And, on September 25, 2014, plaintiff filed a four count complaint (doc. # 1) in this Court alleging: (1) that the defendants violated his rights to procedural and substantive due process in connection with the termination (Counts I and II); (2) that defendants violated 42 U.S.C. § 1981 by harassing him and causing his termination in retaliation for complaints he made "with the Sheriff's department" (Count III, Compl., ¶ 41); and (3) that defendants violated 42 U.S.C. § 1983 by harassing him and causing his termination pursuant to a policy of taking adverse actions against those who report violations or assert lawful rights (Count IV).

On January 22, 2015, the district judge then presiding in the case stayed the proceedings in this case – at plaintiff's request – due to the pendency of the state court appeal from the order confirming the Merit Board decision (doc. # 19). On September 30, 2015, the Illinois Appellate Court affirmed the Circuit Court decision (DSOF ¶8). The stay in this case was lifted, and the

defendants moved to dismiss the complaint. On May 13, 2016, the district judge dismissed Counts I through III (doc. # 34). The district judge dismissed Counts I and II on the ground of *res judicata*, and Count III on the ground that Section 1981 does not create a private right of action against state actors.[2] The district judge denied the motion to dismiss the Section 1983 retaliation claim, explaining that based on plaintiff's allegations, he did not receive a "full and fair opportunity to litigate this claim before the Merit Board." Plaintiff then filed an amended complaint on June 24, 2016 (doc. # 36), which eliminated the claims dismissed by the district judge and plead only the same Section 1983 claim that was asserted in the original complaint (First Amended Complaint at 1 n.1).

Discovery then commenced, and it has now been completed. During the pendency of discovery, on September 23, 2016, the Illinois Appellate Court issued its decision in *Taylor v. Dart*, 81 N.E.3d 1 (Ill. App. 2016), which involved an appeal from a Circuit Court ruling upholding a Merit Board decision. The appellate court held that the Merit Board was improperly constituted beginning in May 2011 when Sheriff Dart appointed an interim member without following proper appointment procedures. As a result, in that case, the appellate court held that the Merit Board decision involving Mr. Taylor was void, and thus remanded the case to the Merit Board for further proceedings. On September 27, 2017, the Illinois Supreme Court denied leave to appeal the appellate court decision. *Taylor v. Dart*, 89 N.E.3d 764 (Ill. 2017).

Thereafter, on November 20, 2017, plaintiff filed his second amended complaint in this case (doc. # 64, "SAC"). In the second amended complaint, plaintiff added allegations concerning the Merit Board and the way in which it was constituted, but he left unaltered the Section 1983 claim and the assertions he offered in support of it (Compare First Amended Compl. ¶¶ 43-57 and

---

[2] At no time has plaintiff sought to challenge those decisions.

3

SAC ¶¶ 46-60). Neither the current version of the complaint nor either of the two predecessor versions asserts any cause of action seeking a review of the Merit Board determination in his case, or any allegation that plaintiff made complaints outside the Sheriff's department.

Against the backdrop of this procedural history and the state of the pleadings, we now turn to the parties' cross motions for summary judgment. The motions have been fully briefed. For the reasons that follow, we grant defendants' motion for summary judgment (doc. # 80) and deny plaintiff's motion for summary judgment (doc. # 84).

## I.

The legal standards governing motions for summary judgment are well-established. Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On cross-motions for summary judgment, "all reasonable inferences are drawn in favor of the party against whom the motion at issue was made." *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). We do not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). That said, we are mindful that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II.

In support of their motions, both parties have submitted their own Rule 56.1 statements of material undisputed facts, and responses to the other party's statement. "In determining what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements." *Barkl v. Kaysun Corp.*, No. 10 C 2469, 2011 WL 4928996, at *1 n.2 (N.D. Ill. Oct. 13, 2011) (citing *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 899 n.2 (N.D. Ill. 2010)). "We review only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). The following facts are undisputed unless otherwise noted by the Court.

Mr. Oesterlin began working as a deputy sheriff at the Skokie, Illinois courthouse in June 2003 (PSOF ¶¶ 3, 5). In 2007, Plaintiff was trained to use the LEADS system (PSOF ¶¶ 21, 22). During the course of his employment at the Skokie Courthouse, Mr. Oesterlin forwarded memos and grievances to various of his supervisors, particularly during the period March 2006 through April 2008. Those memos and grievances alleged that other deputies were committing workplace violations including deputies smoking on the prisoners' dock and in the courthouse, abusive language by supervisors, unsafe handling of firearms, altering of timesheets, illegal gambling, and other issues (PSOF ¶¶ 8-13).

In June 2008, Plaintiff's supervisor, Assistant Chief Louis Sbarbro, filed a Complaint Register with OPR, alleging that plaintiff had been unlawfully using the LEADS system to run personal identifiers (PSOF ¶ 24).[3] In August 2008, plaintiff was de-deputized and transferred to

---

[3] Specifically, plaintiff is accused of running his own personal information, such as name and address, license plate number, firearms owner identification card, and other identifiers, through the LEADS system, to see what the search results looked like (PSOF ¶ 27).

the Daley Center (PSOF ¶¶ 3, 5).[4] Plaintiff continued to make complaints thereafter. In one of those complaints, which he made in October 2008, Mr. Oesterlin contacted the media and the FBI with allegations about on-the-job gambling at the Skokie Courthouse (PSOF ¶ 17). This assertion first appeared in plaintiff's 56.1 fact statement in support of summary judgment; he did not make that assertion in any of the three versions of the complaint he has filed. This is the only time that Mr. Oesterlin has identified that he went outside the Sheriff's department with any complaint.

In August 2010, twenty-two months later, OPR Assistant Director Patrick Murphy expanded the scope of the investigation into plaintiff's LEADS usage to include the time period from June 2007 to June 2008 (PSOF ¶ 25). Specifically, defendants accused plaintiff of violating the Cook County Illinois Court Services Department General Order 2600 and the Merit Board Rules and Regulations by running eleven vanity license plates on June 21, 2007 and then running his own personal information on the system at various times between 2007 and 2008 (PSOF ¶¶ 27, 30).

Plaintiff appeared at a hearing before the Merit Board in June 2012. During the course of the hearing, Commissioner Hogan denied plaintiff's request for discovery related to his arguments about retaliation and disparate treatment (PSOF ¶ 44).[5] Based on the OPR investigation, defendant Dart recommended to the Merit Board that plaintiff be terminated (PSOF ¶ 42, DSOF ¶ 5). In September 2012, the Merit Board terminated plaintiff's employment effective December 27, 2010 (PSOF ¶ 35, DSOF ¶ 5).

---

[4] The parties do not describe the circumstances leading to plaintiff being de-deputized and transferred. They also offer no information about his title or job duties after the transfer.

[5] Plaintiff variously describes the Commissioner's denial of discovery as related to his claims of both disparate treatment and lack of progressive discipline (in addition to his retaliation claim) (*Compare* Pl. Mem. in Support of Summ. J., pg. 9 with PSOF ¶ 44). We interpret his argument to be that he was treated differently than his co-workers by the fact of being denied progressive discipline (and instead being immediately recommended for termination) for the LEADS violation.

## III.

Plaintiff offers three arguments in support of his motion for summary judgment: (1) the Merit Board's decision to terminate him and its subsequent decision not to review its decision after remand are void because the Merit Board was not properly constituted; (2) plaintiff was denied due process during the hearing before the Merit Board and in the proceedings leading up to it; and (3) plaintiff has been denied equal protection pursuant to 42 U.S.C. § 1983. Plaintiff also argues that he is entitled to reinstatement to his previous position, with backpay, as a proper remedy for defendants' alleged violations of his constitutional rights. In their motion for summary judgment, defendants argue that: (1) the Equal Protection Clause does not support plaintiff's claim for retaliation; (2) plaintiff fails to show that his complaints about his co-workers were protected speech; (3) plaintiff has not shown a triable issue on his *Monell* claim; and (4) plaintiff's argument regarding the constitution of the Merit Board and its decisions are not properly before the Court.

We will address each issue in turn, consolidating our analysis of the issues to the extent they overlap. We will begin with the only claims plaintiff has actually pled: his Section 1983 claim asserting violation of equal protection under a "class of one" theory and his *Monell* claim. We will then address arguments raised in the summary judgment motions, but that have not been pled and are not part of this case.

## IV.

In his Section 1983 claim, plaintiff contends that defendants initiated the OPR investigation related to his LEADS use in retaliation for his making complaints about workplace misconduct. This action, says plaintiff, constituted "discrimination based on retaliation" in violation of Section 1983 and the Equal Protection Clause (Second Am. Cmplt. ¶ 54). He further claims that defendants' actions were taken pursuant to a policy, and thus constituted a violation of Section

7

1983 under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978) (SAC ¶¶ 48, 49). Plaintiff has not demonstrated that he is entitled to judgment as a matter of law, or that there is a triable issue under either theory.

## A.

"The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials." *Lauderdale v. Illinois Dep't of Human Servs.*, 876 F.3d 904, 909–10 (7th Cir. 2017). We grant summary judgment for defendants on plaintiff's equal protection claim because that clause does not support claims for retaliation based on general allegations of discrimination unrelated to membership in a particular class. It is undisputed that plaintiff does not identify any protected class, such as race, sex, or age, as the basis for his claims of discrimination. Instead, he contends that he was discriminated against as a "class of one" when defendants singled him out for discipline for his LEADS violations in retaliation for making complaints about co-workers.

The "class of one" theory holds that a plaintiff may show an equal protection violation where the state intentionally treats the plaintiff differently than others who are similarly situated, and there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In *Olech*, the plaintiff stated a class of one equal protection claim by asserting that the Village demanded that the plaintiff grant defendant a larger property easement than it required of her neighbors to connect her property to the city's main water line, in retaliation for a previous lawsuit she had filed against the Village. Subsequent cases upholding a "class of one" have similarly related to unfair "arms-length regulation" of a private citizen where there was a clear, objective standard against which departures, even against a single plaintiff, could be readily assessed. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008).

But *Engquist* made it clear that the "class of one" theory of equal protection does not extend to the public employment context. 553 U.S. at 598. There is a difference, explained the Supreme Court, between the power of the state "'to regulate or license, as a lawmaker,' and the government acting as 'proprietor, to manage [its] internal operation.'" *Id.* The state has greater leeway when regulating its employees than it does when enforcing regulations or laws against private citizens at large. Decisions made in the employment context necessarily involve much greater discretion; they are "often quite subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Engquist,* 553 U.S. at 604.

Mr. Oesterlin's allegations about defendants' actions fall squarely within the public employee context described in *Engquist*. His "class of one" arose from his being (in his view) arbitrarily singled out for discipline for violating defendants' LEADS policies. Moreover, he contends that this singling out was a direct result of his complaining to his superiors about various workplace violations committed by co-workers, and that employees who did not report workplace violations were not disciplined. And, while plaintiff contends that defendants violated the LEADS policy themselves by failing to conduct biennial audits of compliance, that allegation does not change the fact that the actions about which plaintiff complains are purely employment decisions made about him, a public employee. Indeed, plaintiff does not even respond to defendants' argument that the "class of one" theory of equal protection does not apply to public employees. All of the cases he cites in support of his equal protection claim (Pl. Mem. in Support of Summ. J. at 4, 7) are distinguishable because they involve non-public employee plaintiffs. Plaintiff has directed us to no cases that accept a "class of one" theory of equal protection in the employment context, and – in the face of contrary controlling precedent – we decline to do so here.

**B.**

We also deny plaintiff's motion for summary judgment to the extent he makes a claim pursuant to *Monell*. That case held that a government entity may be held liable under Section 1983 when a governmental policy, custom or practice serves to deprive any citizen of the United States of a constitutional right. In addition to showing that defendant has a widespread policy or practice, a plaintiff must also prove that such policy was the "motivating force' behind the alleged injury; that is, there must be a causal link between the municipal action and the deprivation of federal rights. *Bonds v. City of Chicago*, No 16-cv-5112, 2018 WL 1316720 at *2 (N.D.IL March 14, 2018), citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

As we have explained, plaintiff has failed to show, in the first instance, a triable issue on his Section 1983 class of one equal protection claim. Thus, plaintiff's *Monell* claim likewise fails because plaintiff cannot prove that defendants have a policy or practice that served to deprive him of his constitutional rights.[6] Plaintiff cites *Bless v. Cook County Sheriff's Office*, 13-cv-4271, 2016 WL 958554 at *7 (March 8, 2016) for the position that a single constitutional violation by an individual with final policymaking authority (here, Defendant Dart) is enough to support a *Monell* claim. However, that citation does not address the central problem with his *Monell* claim: the failure to show a triable issue that there was a constitutional violation, thus foreclosing him from showing a link between a policy and a constitutional violation. Therefore, we deny plaintiff summary judgment on his *Monell* claim and grant defendants' motion for summary judgment as a matter of law.

---

[6] Plaintiff also says that he suffered a constitutional violation by being denied "equal process" because defendants failed to afford him progressive discipline for his LEADS violation (Pl. Resp. to Summ. J. at 11). Other than stating generally that he was denied progressive discipline, plaintiff provides no evidence related to this claim and thus we decline to address it further.

# V.

The Section 1983 class of one equal protection claim and the *Monell* claim are the only claims pled in the Second Amended Complaint. Nevertheless, the parties have briefed three other matters not found in the pleadings; (1) plaintiff's assertion that defendants retaliated against him in violation of the First Amendment; (2) plaintiff's assertion that he was denied due process in the Merit Board proceeding; and (3) plaintiff's assertion that the Merit Board proceeding terminating him was void and that he therefore is entitled to judgment in his favor with an award of damages and equitable relief. We explain below why none of these matters is properly before the Court in this case.

## A.

We begin with the assertion by plaintiff in his response to defendants' motion for summary judgment that his termination was in retaliation for the complaints he made, in violation of the First Amendment. To allege a retaliation claim based on violation of the First Amendment, plaintiff must allege that (1) he engaged in speech that was protected by the First Amendment; (2) he suffered some deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity or speech was at least a motivating factor for the deprivation. *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 792 (7th Cir. 2016). To determine whether a public employee's speech is entitled to First Amendment protection, courts consider whether the employee spoke as a citizen on a matter of public concern and whether the employee's interest in commenting on the matter of public concern outweighs the public employer's interest in promoting effective and efficient public service. *Kubiak v. City of Chicago*, 810 F.3d 476, 482-83 (7th Cir. 2016). In his response to defendants' motion for summary judgment, plaintiff argues that, by

bringing his complaints about on-the-job gambling to the media, his complaints became a matter of public concern (Pl. Resp. to Def. Motion for Summ. J. at 9).

None of the three versions of plaintiff's complaint identifies any complaints or grievances he aired outside of the Sheriff's department. To the contrary, each iteration of the complaint alleges only complaints or grievances brought within the Sheriff's department. Internal grievances and complaints about employment matters cannot form the basis for a First Amendment retaliation claim. *Forgue v. City of Chicago,* 873 F.3d 962, 966 (7th Cir. 2017).

We recognize that in his summary judgment papers, plaintiff now identifies one occasion in which he publicly aired a grievance: in October 2008, plaintiff went to the media with a report about on-the-job gambling (PSOF ¶ 17). However, plaintiff had multiple opportunities during the course of this four-year-old lawsuit to include that allegation in one of the three versions of the complaint he filed. The existence of this grievance is not some piece of evidence that was solely in the control of the defendants and that plaintiff learned about only late in discovery. Plaintiff knew the nature of the complaints he made and to whom he made them; he alleged internal grievances with specificity (SAC ¶¶ 32, 33). A plaintiff is the master of his pleadings *Myles v. United States,* 416 F.3d 551, 552 (7th Cir. 2005), and here plaintiff chose not to plead the kind of statement that could support a First Amendment claim. We decline to allow plaintiff to amend his complaint by assertions in his summary judgment papers. *Anderson v. Donahoe,* 699 F.3d 989, 997 (7th Cir. 2012).

Finally, even if he had pled a First Amendment retaliation claim, the summary judgment record would warrant entry of judgment for the defendants. Plaintiff has offered no evidence that his October 2008 complaint to the media was a motivating factor either in the OPR investigation or the Merit Board decision. He cites no evidence that the Merit Board members who approved

the termination recommendation knew of that complaint. Moreover, it is undisputed that the OPR investigation and the decision to de-deputize plaintiff and to transfer him to the Daley Center occurred prior to the time he went to the media, and the expansion of the investigation to include his LEADS usage in 2007 did not occur until 22 months afterwards. That time lapse undermines the inference of "suspicious timing," which in any event is not enough to create a triable issue; that is, the logical fallacy of *post hoc ergo propter hoc* (after the fact, therefore, because of the fact) does not alone create an inference of discrimination. *Hall v. Forest River, Inc.*, 536 F3d 615, 622 (7th Cir. 2008) (the fact that one event follows another, without more, does not create an inference of causation).

### B.

Plaintiff argues that the Merit Board's refusal to allow certain discovery deprived him of the ability to bring defenses at the Merit Board that (1) being disciplined for the LEADS violation was retaliatory and (2) he was deprived progressive discipline. However, because the district judge has already dismissed plaintiff's freestanding procedural and substantive due process claims asserted in counts I and II of the original complaint, they are not before us. *Blickenstaff v. R.R. Donnelley & Sons Co. Short-Term Disability Plan*, No. 00-C-938, 2002 WL 169320 *3 (S.D.Ind. January 28, 2002), *citing T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997).

The district judge denied the motion to dismiss the Section 1983 claim, citing plaintiff's allegations that he was denied due process. But plaintiff reads far too much into that ruling, arguing that the ruling constitutes a finding that the Merit Board in fact denied him due process (Pl. Mem. in Support of Summ. J. at 9). A denial of a motion to dismiss is not an endorsement of the truth of the allegations of a complaint, which are merely assumed to be true for the purposes of the motion. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 646 (7th Cir. 2017). Instead, the district judge

13

cited the due process allegations merely as a basis to allow the Section 1983 claim to stand, and not a free-standing claim (indeed, to the extent the denial of discovery rose to the level of a due process matter, that denial came not at the hands of defendants but from the Merit Board, which is not a party). In any event, our determination that the Section 1983 claim fails as a matter of law subsumes any claim that discovery rulings in the Merit Board proceeding violated due process.

C.

We conclude with an issue that the parties raise front and center in the summary judgment briefing: the significance and effect of the Illinois Appellate Court decision in *Taylor*, concluding that the Merit Board was improperly constituted. Plaintiff contends that, as a result, the Merit Board's decision to terminate him is void, and because of that, he is entitled outright to be reinstated to his former position and awarded back pay (Pl. Mem. in Support of Summ. J. at 6). Defendants argue that the Merit Board decision is not void, but merely voidable, and that plaintiff has missed the deadline for filing a claim to have the Merit Board rehear his case. (Def. Resp. to Pl. Mot. for Summ. J. at 4). We disagree with both arguments.

We do agree with plaintiff that in *Taylor*, the Appellate Court held that the Merit Board decision in that particular case, which was made while the Board was improperly constituted, was void. 81 N.E.3d at 8-9. The decisions in this district considering *Taylor* have reached that conclusion as well. We have found only two federal cases discussing how to address decisions made by an improperly constituted Merit Board in the wake of *Taylor v. Dart;* both agree that the prior Merit Board decision is void, and that the remedy is for the unlawful decision to "be vacated and remanded for a hearing before a legally constituted Merit Board." *Taylor*, 81 N.E.3d at 9; *see also Starchvill v. Dart,* 16 C 5713, 2018 WL 3456525, (N.D.Ill. July 18, 2018); *Bless v. Cook County Sheriff's Office,* 13 C 4271, 2018 WL 3474507 (July 19, 2018). In *Bless*, the plaintiff's

14

federal court complaint included a count brought under the Illinois Administrative Review Act, 735 Ill. Comp. State. Ann. 5/3-110, asking that the district court vacate the Merit Board's decision as void and reinstate the plaintiff with full back pay and benefits. The district court agreed that, based on *Taylor*, the Merit Board decision was void. However, instead of reinstatement with back pay, the Court followed Illinois Supreme Court precedent and remanded the case to the Merit Board. *Bless*, 2018 WL 3474597 at *3, *citing Vuagniaux v. Dep't of Prof'l Regulations*, 802 N.E.2d 1156, 1166 (Ill. 2003).

After *Bless* was decided, a different panel of the Illinois Appellate Court than the one which decided *Taylor* addressed the validity of another termination decision made by the same improperly constituted Merit Board. In *Lopez v. Dart*, 2018 IL App (1st) 17-0733-U (August 29, 2018), the Appellate Court held that the improperly constituted Merit Board's decision was valid pursuant to the *de facto* officer doctrine, which the *Taylor* court had declined to apply. The *de facto* officer doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). In declining to follow *Taylor* and instead holding that the Merit Board's decision was not void, the *Lopez* court differentiated between the *Taylor* plaintiff, who was the first to raise the issue of the improper constitution of the Merit Board, and all of the other plaintiffs who might seek to overturn their own Merit Board decisions in light of *Taylor*.

Specifically, the *Lopez* court explained that the *de facto* officer doctrine strikes the proper balance between "the public's interest in promoting the orderly functioning of government," and the public's interest in uncovering and exposing "illegal appointment procedures and thereby ensuring administrative agencies comply with the statutory mandates which govern them." *citing*

*Daniels v. Industrial Commission,* 775 N.E.2d 936, 945 (Ill. 2002) (McMorrow, J., specially concurring, joined by Freeman, J.). While the public's interest in uncovering unlawful appointments may predominate with the original plaintiff, the *Daniels* court reasoned that after the injustice is uncovered, "the public interest in preserving the validity of a large multitude of [the agency's] decisions takes precedence. 775 N.E.2d at 945.

We express no views as to the impact of *Taylor* or *Daniels* on Mr. Oesterlin's assertion that the Merit Board's decision was void. Plaintiff has pled no claim in this case based on the constitution of the Merit Board, and as a court of limited jurisdiction, we are not at liberty to reach out to decide matters not before us. We therefore deny plaintiff's motion for summary judgment seeking reinstatement and backpay because of the wrongfully constituted Merit Board, and grant defendants' motion for summary judgment. Any relief plaintiff might seek because of the constitution of the Merit Board when it decided his matter must be addressed at the state level.

## CONCLUSION

For the reasons stated above, we deny plaintiff's motion for summary judgment (doc. # 84) and grant defendants' motion for summary judgment (doc. # 80). This case is terminated.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: September 10, 2018**